Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 12-1437

MARGARITA PACA,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Donglai Yang on brief for petitioner.
Terri J. Scadron, Assistant Director, Department of Justice, Office of Immigration Litigation, Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Manuel Palau, Acting Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

January 23, 2013

**Per Curiam**.  Petitioner Margarita Paca is a native and citizen of the Dominican Republic who illegally entered the United States in 1992.  In 1995, she was determined to be deportable from the United States and given six months to voluntarily depart.  She remained in the country and filed a motion to reopen her proceedings in 2011; the immigration court denied her motion, and the Board of Immigration Appeals ("BIA") affirmed.  Because her motion to reopen was untimely, we deny her petition for review.

Paca entered the United States without inspection at or near Mayaguez, Puerto Rico on February 1, 1992.  On August 15, 1995, an immigration judge in San Juan, Puerto Rico adjudged her deportable and gave her until February 15, 1996, to voluntarily depart.  On December 29, 1995, Paca married Angel Luis Rodriguez-Mangual, a United States citizen.  She ignored the order to depart and currently lives in Louisiana, where she is still married to Rodriguez.  In 1997, her husband filed an I-130 petition on her behalf based on their marriage, and they were notified in 1998 that the petition was approved.  Such approval is an initial step toward adjustment to lawful permanent resident status, but it does not appear that Paca ever obtained such status.

On January 18, 2011, Paca filed a motion with the immigration court to reopen her removal proceedings; she based her motion on changed circumstances, citing her marriage to a United States citizen and approval of her visa petition.  The immigration

-2-

judge denied her motion as untimely. The BIA affirmed, and Paca filed a timely petition to this court.

Under the regulations in effect at the time of Paca's motion, motions to reopen proceedings before the immigration court must be filed within ninety days of a final administrative order or by September 30, 1996, whichever is later. 8 C.F.R. § 1003.23(b)(1) (2011). The immigration court's final deportation order was in August 1995, so Paca's deadline to file a motion to reopen under current regulations[1] was September 30, 1996. There are a number of regulatory exceptions to this deadline, see id. § 1003.23(b)(4)(i)-(iv), but none applies here.[2]

Paca focuses on a statutory bar to applications for adjustment of status after defiance of a voluntary departure order; she argues that this bar prevented her from seeking relief in a timely fashion, so her motion to reopen should be granted despite its untimeliness. Section 245(i) of the Immigration and

---

[1] The 1995 regulations set a thirty-day deadline for motions to reopen, but provided that this deadline "may be excused in the discretion of the [Immigration and Naturalization] Service where it is demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner." 8 C.F.R. § 103.5(a)(1)(i) (1995). The current deadlines (the later of ninety days or September 30, 1996) went into effect with the 1997 regulations. See 8 C.F.R. § 3.23(b)(4)(i) (1997).

[2] The closest is the exception for "changed country conditions arising in the . . . country to which removal has been ordered," 8 C.F.R. § 1003.23(b)(4)(i) (2011), but this requires changes in the country of removal as opposed to a mere change in personal circumstances such as Paca's marriage, see Larngar v. Holder, 562 F.3d 71, 76-77 (1st Cir. 2009).

-3-

Nationality Act ("INA"), 8 U.S.C. § 1255(i) (2006), allows aliens who enter the United States without inspection and then marry United States citizens to apply for adjustment to lawful permanent resident status. It is true that according to the statute applicable at the time of Paca's marriage, aliens who failed to follow a voluntary departure order were barred from applying for adjustment to permanent resident status for five years after the scheduled departure date. Immigration Act of 1990, Pub. L. No. 101-649, § 545(a), 104 Stat. 4978, 5064 (formerly INA § 242B(e)(2)(A), 8 U.S.C. § 1252b(e)(2)(A)).[3] Yet this fact does not entitle Paca to have her proceedings reopened.

The question of when Paca could have applied for adjustment to permanent resident status is distinct from the question of whether Paca's motion to reopen her deportation proceedings was timely. The timeliness of Paca's motion to reopen is governed by 8 C.F.R. § 1003.23; as discussed above, this regulation sets September 30, 1996 as the deadline, and no regulatory exception applies. Perhaps one could construe Paca's argument as advocating for an equitable exception to the deadline

_____

[3] Paca argues that a ten-year bar applied, citing INA § 240B(d)(1), 8 U.S.C. § 1229c(d)(1) (2006). Yet the ten-year bar was enacted in 1996, and did not become effective until April 1, 1997, meaning that it applies only to removal proceedings initiated after that date. See Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 304, 110 Stat. 3009-546, 3009-596 to 3009-597 (inserting INA § 240B); id. § 309(a), 110 Stat. at 3009-625 (effective date).

where the petitioner is eligible for adjustment of status but was statutorily barred from such adjustment at the time of her marriage. Even if such an exception existed,[4] it would not be available here. Paca was married December 29, 1995, and the departure deadline of her voluntary departure order was February 15, 1996. Between December 29, 1995, and February 15, 1996, Paca could have applied to adjust her status under section 245(i). See 8 U.S.C. § 1255(i) (1994).

In addition, even under Paca's theory of the case, her motion still would not be timely. Under Paca's theory (which, as described, is legally incorrect), she was barred from adjustment of status for ten years after her voluntary departure deadline, until February 2006. Yet she offers no explanation for why she waited almost five years more years, until January 2011, to file her motion. The petition for review is denied.

So ordered.

---

[4] See Adjustment of Status to that Person Admitted for Permanent Residence; Temporary Removal of Certain Restrictions of Eligibility, 66 Fed. Reg. 16,383, 16,386 (Mar. 26, 2001) ("The LIFE Act Amendments contain no special provisions for reopening cases under Section 245(i) of the Act (8 U.S.C. § 1255(i)) where an alien already is the subject of a final order of removal, deportation or exclusion. Accordingly, motions to reopen based on Section 245(i) will be governed by the . . . current rules regarding motions to reopen . . . .").